1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF COLORADO
 3    Case No. 13-cr-00392-CMA
 4    _____
 5    UNITED STATES OF AMERICA,
 6         Plaintiff,
 7    vs.
 8    GEORGE T. BROKAW, JOHN J. PAWELSKI, and MIMI M. VIGIL,
 9         Defendants.
10    _____
11           Proceedings before KATHLEEN M. TAFOYA, United
12    States Magistrate Judge, United States District Court for
13    the District of Colorado, commencing at 3:08 p.m., November
14    7, 2014, in the United States Courthouse, Denver, Colorado.
15    _____
16           WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS
17    ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...
18    _____
19                          APPEARANCES
20           MATTHEW KIRSCH and MARTHA PALUCH, Assistant United
21    States Attorneys, appearing for the government.
22           GEORGE T. THOMAS, JOHN J. PAWELSKI, and MIMI M.
23    VIGIL, the defendants herein, appearing pro se.
24    _____
25                    CONTINUED DETENTION HEARING
```

```
 1                    P R O C E E D I N G S
 2              (Whereupon, the within electronically recorded
 3    proceedings are herein transcribed, pursuant to order of
 4    counsel.)
 5              THE CLERK:  All rise.  Court is in session.
 6              THE COURT:  I'll try it again now.  Sorry,
 7    everyone.  Please be seated.
 8              All right.  We are here again in Case No. 13-cr-
 9    392, United States of America versus George Thomas Brokaw,
10    John Pawelski, and Mimi Vigil.  May I have appearances,
11    please.
12              MR. KIRSCH:  Matthew Kirsch and Martha Paluch for
13    the United States, Your Honor.
14              THE COURT:  All right.  And I see that the three
15    defendants are here in custody.
16              All right.  What I did over the lunch hour is --
17    well, it's kind of beyond lunch, but basically I talked to
18    several people from the probation department.  Given the
19    comments of the defendants, I talked to Mr. Haberman
20    (phonetic), Mr. Ford, several others.  I didn't talk to
21    every single one, but I had a -- I talked to Travis Cormany
22    (phonetic), Mr. Murphy came to see me, and so I've talked to
23    them together and separately, so I think I have a pretty
24    good feel for how all of you did on bond, and there are a
25    couple of -- there were a couple of problems.
```

1   Mr. Brokaw, we talked you getting that passport
2   card.  You know, that's definitely a violation of your bond.
3   You weren't violated for that, but --
4           DEFENDANT BROKAW: I understand, Your Honor.  When
5   I did that, the documentation clearly showed that I -- that
6   I was applying for it for identification, and I promptly
7   sent a copy of it to -- up to the court up here so that they
8   would see.  I didn't try to conceal anything, and they knew
9   I had it.  I wanted to identify myself as a state citizen,
10  okay, and that -- and that was the purpose that I did that
11  for.
12          THE COURT: All right.  Well, they -- and they said
13  to me that -- I think it was Mr. Ford told me you had turned
14  it over.
15          DEFENDANT BROKAW: Oh, yeah, I turned it over.
16          THE COURT: So not -- not too much of an issue.
17          Ms. Vigil, we talked about the gun incidences,
18  that, of course, is a violation, too, but with those
19  exceptions, the reports that I've gotten back -- and I will
20  share this with the government who I have not talked to
21  about this -- were that the defendants complied with their
22  conditions of bond.  Not always the most willingly, not
23  always the happiest, but it's not a requirement of your bond
24  that you be happy, right?  It's not a -- it's -- yeah, and
25  it's not even a requirement that you not be rude.  I mean,

1    none of those things are a part of your bond.

2            So -- so while I think there's a lot of
3    reservation about -- on behalf of everyone, really, because
4    you profess not to recognize any court control over you,
5    there's a real feeling that you won't -- you may run away,
6    that you won't abide by conditions of bond.  I think
7    personally -- and it is referred to me, so I think I'm to
8    use my discretion -- there's a pretty fine line here.  I
9    don't agree necessarily that it's a contract that binds you.
10   I think that when the Court allows you bond, it's kind of a
11   leap of faith for the Court, and we have to -- we have
12   criteria that we make a decision about whether or not we
13   have some faith that you'll appear, and I don't -- I don't
14   like the idea of not giving you bond because of your
15   beliefs, that doesn't sit very well with me.  I think you
16   have a right to have your beliefs regardless of how I think
17   about them, because that's what I think the United States
18   is.

19           Now, if you do things to express your beliefs in
20   ways that the rest of society thinks is illegal, you may
21   have to pay a consequence for that, but that doesn't have
22   anything to do with bond.  So I am inclined to give you all
23   bond in this matter, but I am going to tip my hat at the
24   statute which says that there's a presumption that you don't
25   get bond, and I am going to place you on a curfew and a GPS

1  ankle monitor.  Now, the ankle monitor -- the GPS ankle
2  monitor is different from the -- I don't -- Ms. Vigil, you
3  weren't on that before, but it's different, Mr. Brokaw, Mr.
4  Pawelski, from what you had before.  It looks a little
5  different, it acts different.  Instead of being a radio
6  frequency where it tells you if you're out of range of the
7  mother base, a GPS follows you around.  I mean, it says
8  where you are at all times.  There's generally parameters
9  set up.  For instance, my feeling, and what I'm going to
10 express today but not require of probation, is that your
11 parameter should be the City of Colorado Springs.  I would
12 like you to be able to go about your life as much as
13 possible as normal.  Go to work, go to your wedding
14 anniversary, go to weddings, that sort of thing.
15         There will be a restriction on you not to go to
16 the airport, for instance, the train station, stuff like
17 that.  Now, all those things are subject to permission from
18 the probation office, so if there's some reason why you have
19 to go somewhere and it's outside the parameters, you just
20 need to ask, and the probation officer in many instances can
21 give you permission.  If he can't, he or she can't, then
22 they come back to me, and then if you've got a good reason
23 why you need to do it, I'd be inclined to let you do it.
24 That probably wouldn't be the case if where you wanted to go
25 was Canada or Mexico, but if it's in the U.S., probably we

```
 1     could work something out.
 2             So what I -- what I want to know -- I don't want
 3     any of you to make me any promises, I just want to know:  Do
 4     you intend to abide by the conditions of the bond if you
 5     sign the bond paperwork today?  Ms. Vigil, do you intend to
 6     abide by them?
 7             DEFENDANT VIGIL: Yes.
 8             THE COURT: Do you, Mr. Pawelski?
 9             DEFENDANT PAWELSKI: Yes, ma'am.  The only issue I
10     would have is my financial with a GPS monitoring system.
11             THE COURT: Right, and you will have to pay for
12     that.  It is a sliding scale, so it depends on how much you
13     make how much you get charged.
14             DEFENDANT PAWELSKI: Okay.  The other -- the other
15     issue I have on (inaudible).  I have -- I sell industrial
16     lighting in my -- my part time job.  Sometimes I need to go
17     to Denver.  Do I just need to call Rob at that point?
18             THE COURT: Yes.
19             DEFENDANT PAWELSKI: Just tell him I'm going to be
20     in Denver?  Okay.
21             THE COURT: Yes, if Rob is still your probation
22     officer.  I'm not sure that it will be the same person.
23             DEFENDANT PAWELSKI: Oh, I see.
24             THE COURT: Because they assign -- it may very well
25     be, but they -- oftentimes they assign you differently if
```

1    you're on a GPS monitor.

2    DEFENDANT PAWELSKI: I see.

3    THE COURT: Because there's people that are more
4    schooled in that, okay?  So I'm -- I can't promise you it
5    will be the same.

6    DEFENDANT PAWELSKI: I know Mr. Haberman is not a
7    technical wiz.

8    THE COURT: Well, I don't know.

9    DEFENDANT PAWELSKI: I found out that much about
10    him.

11    THE COURT: I'll believe you.

12    Mr. Brokaw, do you intend to abide by the
13    conditions of bond if I set a bond?

14    DEFENDANT BROKAW: Yes, ma'am.

15    THE COURT: All right.  And, government, you're --
16    you have objected to bond of any kind, but this was kind of
17    your fallback position, so it that still correct?

18    MR. KIRSCH: Yes, Your Honor.

19    THE COURT: All right.  So this bond is really only
20    going to be good for -- until your sentencing date, all
21    right?  At sentencing, it's completely up to Judge Arguello
22    whether or not you get taken into custody, whether your bond
23    gets continued, anything like that.  I mean, that's all of
24    her call, not mine, so this is really just through --
25    through January, although there's no real end date on this.

1    For each of you, I've asked the probation office,
2    with the exception of this GPS monitor, to make the bond
3    conditions look pretty much the same as they were so that
4    there's not a lot of different things you have to abide by,
5    so I don't think there'll be any surprises.  The face
6    amount, Mr. Brokaw, on your bond is $50,000.  It is
7    unsecured, which means you don't have to put up any money
8    today, and for Mr. Pawelski and Ms. Vigil, it's $25,000
9    unsecured, and the differences in the amount is based on the
10   differences that were originally done.
11   Now, for each of you, though, you don't have to
12   put up any money.  The money is real, because a judgment
13   could be entered against you if you violate the conditions
14   of bond.  What you do with that judgment or how you feel
15   about it is completely a different matter, but I just want
16   to advise you that that's there.
17   Now, the other important thing about bond, so I
18   don't want to make light of this in any way, is that if you
19   don't show up -- which, really, I think your only appearance
20   is going to be for sentencing.  So if you don't show up for
21   sentencing, you could get charged with another crime called
22   bond jumping, and bond jumping carries up to ten years in
23   prison, and it's usually added to any other sentence that
24   you might get on the conviction that you just sustained
25   today, so it's a very serious matter, it's not just that

```
1    your bond would be revoked if we caught you.  I mean,
2    obviously that would happen, the bond would be revoked and
3    you'd be in custody, but you could be going through this
4    again with a -- some with a pretty high penalty.
5              Do you understand that, Ms. Vigil?
6              DEFENDANT VIGIL: Yes.
7              THE COURT: Mr. Pawelski, do you understand that?
8              DEFENDANT PAWELSKI: I do.
9              THE COURT: And, Mr. Brokaw, do you understand?
10             DEFENDANT BROKAW: I do.
11             THE COURT: Okay.  So when you sign, I just don't
12   want there to be any surprises.
13             Now, I don't think this really applies to any of
14   you, but if you get into trouble of any kind while you're on
15   bond, that could revoke your bond, too.  A minor traffic
16   ticket does not cause revocation of your bond, but something
17   more major would, a DUI would, or, you know, any kind of
18   criminal behavior would -- would cause you to get your bond
19   revoked.
20             Now, let me go through -- and I'm going to use Mr.
21   Brokaw here as a -- as a guide, the conditions, just to make
22   sure that none of this is a surprise to you.  I think it
23   should be the same.  So the conditions are that you submit
24   to supervision by the U.S. Probation Office.  Again, this
25   will be out of Colorado Springs for all of you so that it's
```

1   more convenient, the phone number is on your bond paperwork,
2   and your reporting date on this bond is going to be the 10th
3   of November, which is Monday, so Monday, November 10th at 11
4   a.m.  So each of you will need to report to the Colorado
5   Springs Probation Office on Monday.
6          Now, before you leave today, you're going to get
7   the ankle monitor and all that stuff, so before you actually
8   are out of custody, all of that will be taken care of.  I'm
9   going to get the U.S. Marshals to process you, as long as
10  you sign the bond, and then they will release you to the
11  probation department here, and they'll explain all of the
12  equipment to you, because there's -- it's -- you know, you
13  got to charge it and that sort of thing.  It only runs for
14  about eight hours, and then you have to charge it, so
15  there's a home base system that you plug it into or sit next
16  to or something and it charges the unit, so they'll explain
17  all that to you today, then you're on your own, get back to
18  Colorado Springs and report to your officer on Monday, okay?
19  Any questions about that?
20         MR. BROKAW:  No.
21         DEFENDANT VIGIL:  We'll know by Monday who -- who
22  to report to?
23         THE COURT:  Yes.  Yeah.  For now, report the way
24  you always have, to the same officer, all right?  The
25  Colorado Springs office is pretty small, so they'll --

1   someone will be there that probably you know and that knows
2   you, all right?  Then that -- you know where to go, right,
3   on Wahsatch there?
4           DEFENDANT VIGIL: Uh-huh.
5           THE COURT: All right.  Now, the next one is do not
6   obtain a passport or any international travel document,
7   okay?
8           DEFENDANT BROKAW: I got it.
9           THE COURT: Got it?  Got it this time, okay.
10          And both of you, do you understand?  Don't apply
11  for one, because obviously bad things happen, you know,
12  because they notify us, everything is so computerized these
13  days.
14          You've got your -- got to abide by the following
15  restriction on personal association, residence, or travel;
16  State of Colorado unless you're granted permission.  So as
17  part of the bond, you're limited to the state of Colorado.
18  Now, as part of the GPS, you're going to be limited further
19  than that.  I mean, it's just going to be the Colorado
20  Springs area.  And then, of course, you'll have permission
21  to go to court.  And if you have doctors up here or
22  something like that, you just need to work that out with
23  the probation officer.
24          Do not possess a firearm, destructive device, or
25  other weapon, and as happened to Ms. Vigil, don't let

1  anybody else come in your home with any of those things,
2  because once it's in your house, it's in your constructive
3  possession, because you could get it.  Even if you can't
4  really get it, even if it's locked up and in your house,
5  that's still a violation.  Don't let anybody in with a gun.
6        Do not use alcohol excessively.  That does not
7  mean you can't have a beer or a glass of wine if that's what
8  you want, but don't -- don't be out in the streets drunk,
9  you know, that -- so keep it under control.
10       Do not possess, use or sell marijuana, or any
11 marijuana derivative.  It's legal in the state of Colorado,
12 not legal federally, so I -- I don't suspect that's a
13 problem for any of you, but to the extent you think well,
14 it's legal, it -- it's not under the bond.  And then
15 obviously do not use any kind of other controlled substance
16 unless a doctor has prescribed it.  Your medications are
17 okay as long as a doctor's prescribed it.
18       Then you're going to be subject, like I said, to
19 a curfew.  You'll be restricted to your residence every day
20 from -- well, this is backwards.  It's -- it's 9 p.m. to 6
21 a.m., right?
22       MR. STREICH: My mistake, Your Honor.  Sorry.
23       THE COURT: Okay.  So 9 p.m. to 6 a.m.  If your job
24 or something conflicts with this, talk to the probation
25 officer.  They can make exceptions on certain days or

1    whatever, but in general, it's for each of you the same
2    curfew.  And that's so that the machinery can kind of
3    regroup, you know, and you can charge everything.  But it's
4    not really home detention or anything like that.  During the
5    day you're free to move about and go about your life as long
6    as you stay within the Colorado Springs area.
7         You'll submit to location monitoring GPS.  It is
8    a little more expensive than that RF that you're used to, so
9    you'll have to pay at least a portion of it, but that's,
10   like I said, a sliding scale.
11        Report as soon as possible to your probation
12   officer if you have any contact with law enforcement.  This
13   would mean also if you had to call them.  For instance, if
14   you had a burglary in your house, you call the police, their
15   name -- your name is going to be on a contact card, so you
16   need to let the probation officer know that you had contract
17   with law enforcement.  And then do not act as a -- as an
18   informant for any law enforcement agency without prior
19   permission from the court.
20        All right.  Ms. Vigil, do you have any questions
21   about anything that I've talked about in the bond?
22        DEFENDANT VIGIL:  No, I don't have any questions.
23        THE COURT:  Anything different that you don't
24   understand?
25        DEFENDANT VIGIL:  No, there's not much different

1    than that.  Can you give me any idea what the cost is?
2              THE COURT: Well, I think the maximum cost -- and
3    I'm not positive of this, but it's somewhere around 7.50 a
4    day.  So that adds up quite a bit.  I mean, that's 75.50 for
5    every ten days, so, you know, you're talking about four or
6    five hundred dollars, if you had to pay the whole thing, per
7    month.  Okay, so that's the cost, but again, it is a sliding
8    scale, so I'm changing on your -- your bond the curfew to be
9    p.m. to a.m.  I'm making sure all of these are correct.
10             Anything else?  Any other questions?
11             DEFENDANT VIGIL: No, my only question.
12             THE COURT: All right.  And, Mr. Pawelski, I keep
13   saying your name wrong, I'm kind of –-
14             DEFENDANT PAWELSKI: No, you're doing it actually
15   very well.  Thank you.
16             THE COURT: Any questions on the bond or anything
17   you want to talk about?
18             DEFENDANT PAWELSKI: No, I think everything has
19   been answered.
20             THE COURT: Yeah, the financial's the main thing,
21   but it's not the Court's intent to impoverish you, just to
22   get some participation from you on it, all right?
23             DEFENDANT PAWELSKI: Okay.
24             THE COURT: Mr. Brokaw?
25             DEFENDANT BROKAW: No questions, it sounds pretty

1   much like what the -- what was previously in effect.
2   THE COURT: All right.  So I'm going to hand these
3   to the clerk and she'll hand them to you.  There's two
4   places to sign, one is the bond and one's the conditions.
5   (Pause in the proceedings)
6   THE COURT: The sentencing date is January 28?
7   MR. KIRSCH: Yes, Your Honor.
8   THE COURT: Do you have a time?
9   MR. KIRSCH: The time that I have is 3:30, Your
10  Honor.
11  (Pause in the proceedings)
12  DEFENDANT VIGIL: I did have a question.  Will we
13  get a copy of this?
14  THE COURT: Yes.
15  (Pause in the proceedings)
16  THE COURT: Using my high-tech stamp on these
17  documents.  I guess I'm not a techie either.
18  (Pause in the proceedings)
19  THE COURT: Okay.  I've signed the bond and the
20  conditions for each of you.  For the Marshals, I want them
21  released in this building.  So I know you probably have to
22  take them back over on the other side for processing, but I
23  want you to bring them back here through whatever portal you
24  have and release them here.  Wait for the probation officer,
25  they're going to come up so they can escort them downstairs

1      so they can get their monitoring put on here --

2              U.S. MARSHAL: Yes, ma'am.

3              THE COURT: Okay? So for each of you, the only
4      thing I added in you are going to get a copy of this. I
5      checked the defendant is ordered released after processing,
6      and I said the defendant is ordered released after
7      processing to probation for monitoring, and that's so they
8      can get the -- get you all equipped with the monitoring
9      equipment and explain how it works to you before you leave
10     here tonight. All right?

11             Any problems or questions that any of you have?

12             DEFENDANT BROKAW: Where is this building at? I
13     don't know where we're at.

14             THE COURT: This building is at the corner of 19th
15     and Stout. This is the old courthouse.

16             DEFENDANT BROKAW: Oh, okay.

17             THE COURT: Yeah. So you've -- you've probably --
18     for Judge Arguello you went to the new courthouse at Champa
19     and Stout, or Champa and 19th Street.

20             DEFENDANT BROKAW: A block away.

21             THE COURT: Right. Yeah, one block kind of more or
22     less south, okay? So that's where you are now. So the
23     Marshals may take you back over to the new building, then
24     they'll bring you back over here, that's why they're
25     shuffling you back and forth, just so you don't have to be

17

1    out on the street racing round, you just can be inside and
2    they'll take you back and forth to get it all processed.
3    Okay?
4              DEFENDANT BROKAW: Okay.
5              THE COURT: So for family members that are here,
6    you'll pick -- you'll see them here.  Probation's on the
7    first floor of this building, so that's where they'll be.
8    Okay.  Any questions?
9              DEFENDANT BROKAW: No, ma'am.  Thank you so much.
10             DEFENDANT VIGIL: No.
11             THE COURT: Anything further from the government?
12             MR. KIRSCH: No, Your Honor.  Thank you for your
13   careful consideration.
14             THE COURT: All right.  We'll be in recess and
15   we'll get you the copy of your bond paperwork.
16             THE CLERK: All rise.
17             (Whereupon, the within hearing was then in
18   conclusion at 3:31 p.m. on November 7, 2014.)
19
20             I certify that the foregoing is a correct
21   transcript, to the best of my knowledge and belief, from the
22   record of proceedings in the above-entitled matter.
23
24        /s/ Bonnie Nikolas                    June 10, 2015
25        Signature of Transcriber                  Date

AVERY/WOODS REPORTING SERVICE, INC.
455 SHERMAN STREET, SUITE 460, DENVER, CO  80203
303-825-6119